UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

APRIL ELIZABETH CLARK,

    Plaintiff,                                                 Civil Action No. 17-CV-13408

vs.                                                            HON. BERNARD A. FRIEDMAN

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT, GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT,
AND REMANDING FOR FURTHER PROCEEDINGS**

This matter is presently before the Court on cross motions for summary judgment [docket entries 11 and 15]. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide these motions without a hearing. For the reasons stated below, the Court shall deny defendant's motion, grant plaintiff's motion, and remand the matter for further proceedings.

Plaintiff has brought this action under 42 U.S.C. § 405(g) to challenge defendant's decision denying her applications for Social Security disability insurance and Supplemental Security Income benefits. An Administrative Law Judge ("ALJ") held a hearing in April 2016 (Tr. 39-57) and issued a decision denying benefits in July 2016 (Tr. 20-34). This became defendant's final decision in September 2017 when the Appeals Council denied plaintiff's request for review (Tr. 1-4).

Under § 405(g), the issue before the Court is whether defendant's decision is supported by substantial evidence. As the Sixth Circuit has explained, the Court

> must affirm the Commissioner's findings if they are supported by
> substantial evidence and the Commissioner employed the proper

> legal standard. *White*, 572 F.3d at 281 (citing 42 U.S.C. § 405(g)); *Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (internal quotation marks omitted); see also *Kyle*, 609 F.3d at 854 (quoting *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir. 2009)). Where the Commissioner's decision is supported by substantial evidence, it must be upheld even if the record might support a contrary conclusion. *Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989). However, a substantiality of evidence evaluation does not permit a selective reading of the record. "Substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal citations and quotation marks omitted).

*Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 640-41 (6th Cir. 2013).

At the time of the ALJ's decision, plaintiff was 42 years old. She has a high school education and experience as an assembly line worker (Tr. 42, 154). Plaintiff claims she has been disabled since June 2013 due to back pain, carpal tunnel in both wrists, arthritis in her spine and hands, diabetes, high cholesterol, sleep apnea, depression, panic attacks, and chronic pain (Tr. 163, 171). The ALJ found that plaintiff's severe impairments are "degenerative disc disease, obesity, bilateral carpal tunnel syndrome, depression, and panic disorder" (Tr. 25) and that her non-severe impairments are diabetes, high cholesterol, sleep apnea, and right shoulder issues (Tr. 26). He found that plaintiff cannot perform her past work but that she has the residual functional capacity ("RFC") to perform a limited range of light work.[1] A vocational expert ("VE") testified in response to a

---

[1] Specifically, the ALJ found that plaintiff can

hypothetical question that a person of plaintiff's age, education, and work experience, and who has this RFC, could perform certain unskilled sorting, packaging, and "product processing and product finishing" jobs (Tr. 54). The ALJ cited this testimony to support his conclusion that plaintiff is not disabled because work exists in significant numbers that she could perform (Tr. 33).

Having reviewed the administrative record and the parties' briefs, the Court concludes that defendant's decision is not supported by substantial evidence because the ALJ's RFC evaluation of plaintiff is flawed. Since the hypothetical question incorporated a flawed RFC evaluation, it failed to describe plaintiff in all relevant respects and the VE's testimony given in response thereto cannot be used to carry defendant's burden to prove the existence of a significant number of jobs that plaintiff is capable of performing.

The ALJ's RFC evaluation is flawed for the following reasons. First, the ALJ failed to fully consider the side effects of plaintiff's medications. The record indicates that plaintiff takes, or at various times has taken, many medications, including Alprazolam (Xanax), Aprine, Metformin, Norco, Meloxicam, Hydrocodone, Meloxicam, Lamotrigine, Duloxetine, Citalopram, Lisinopril, Piroxicam, Neurontin, Cymbalta, Lamictal, Ativan, Methylprednisone, Duler, Gabapentin, ProAir, Symbicort, Omeprazole, and Lamisil (Tr. 166, 182, 212-20, 241, 261, 316-17, 346, 378, 433),

---

perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following additional limitations: occasional postural activities, but no ladders, ropes, or scaffolds; capable of understanding, remembering and executing work that is unskilled with an SVP of 1 or 2; no vibratory tools; only frequent handling, fingering, and grasping on the right; and accommodations for a sit/stand option, but that by exercising that option work [sic] be off task less than 10% of the day.

(Tr. 27).

several of which have known side effects. On her function report, plaintiff indicated that some of her medications make her feel tired, dizzy, and sleepy (Tr. 173, 180-82). Elsewhere, plaintiff indicated that some of her medications make her feel foggy, tired, forgetful, and sleepy (Tr. 214-16). Plaintiff testified that her medications make her feel fatigued, confused, and dizzy (Tr. 51).

The ALJ's only discussion of this issue was to dismiss plaintiff's testimony on the grounds that "in January 2016 the claimant was described as not experiencing lightheadedness or dizziness (Exhibit 3F, page 4)" (Tr. 29). This statement does not sufficiently address the issue of plaintiff's medication side effects. Plaintiff does not claim to experience lightheadedness. She does claim to experience dizziness. While at the page cited by the ALJ the doctor answered "No" to the question of whether "the patient has been experiencing dizziness and/or lightheadedness" (Tr. 319), on the same form he listed "[d]izziness and giddiness" among plaintiff's confirmed problems (Tr. 316), as he did on at least ten other occasions (Tr. 322, 328, 333, 341, 345, 349, 354, 359, 363, 366). Further, he answered "Yes" to the question about whether "the patient has been experiencing dizziness and/or lightheadedness" two weeks and four weeks before giving the "No" answer (Tr. 324, 330).

On this record, it was unreasonable for the ALJ to conclude that plaintiff does not experience dizziness. Further, the ALJ made no findings about the other side effects plaintiff claims to experience, i.e., fatigue, confusion, forgetfulness and sleepiness. The Sixth Circuit has held that the ALJ must evaluate "[t]he type, dosage, effectiveness, and side effects of any medication" as part of the process of determining the extent to which side effects impair a claimant's capacity to work. *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 532 (6th Cir. 2014) (quoting 20 C.F.R. § 416.929(c)(3)(i)-(vi)). Further, hypothetical questions to vocational experts must account for

4

medication side effects. *See White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 789-90 (6th Cir. 2009). On remand, the ALJ must determine which medications plaintiff was taking during the relevant time period; make findings as to the nature and severity of these medications' side effects, if any; and revise his RFC assessment and his hypothetical question(s) to the VE, as appropriate.

Second, the RFC assessment in this matter is flawed because substantial evidence does not support the ALJ's finding that despite her bilateral CTS plaintiff can perform light work (which under 20 C.F.R. § 404.1567(b) requires lifting ten pounds frequently and up to twenty pounds occasionally) with the only hand-related limitations being "no vibratory tools" and "only frequent handling, fingering, and grasping on the right" (Tr. 27). Plaintiff testified that her "fingers go numb," that she "drop[s] a lot of thing," that she is "not able to hold on," that "[i]t's painful when my hand goes numb," that she would need both hands to lift a gallon of milk, that medication does not help with her hand/finger/wrist pain, and that she wears baggy clothing because she cannot manipulate bottons, snaps or zippers (Tr. 48-49). Plaintiff wrote on her disability report that her "fingers go numb and hurt [and] I constantly drop things because of the numbness" (Tr. 170). On her function report plaintiff indicated that she has "numbness and pain in both hands and [wears] a wrist/hand brace. I constantly drop things. I cannot hold things or my fingers go numb" (Tr. 173). During her psychological examination in October 2014, it was noted that plaintiff wore braces on both wrists (Tr. 312).

The only medical opinion in this record that commented specifically about the functional impact of plaintiff's CTS is from Dr. Jurado, who examined plaintiff at defendant's request in May 2016 and who noted "[s]ensory perception . . . both hands absent, . . . right hand absent, left decreased" (Tr. 435). Dr. Jurado opined that plaintiff could occasionally (one-third of

5

the time) lift and carry up to ten pounds and "never" more than ten pounds; and that she could "never" use her hands for reaching overhead and only occasionally for handling, fingering, feeling, and pushing/pulling (Tr. 437, 439).

The ALJ rejected plaintiff's testimony about her hand complaints, as well as Dr. Jurado's hand-related restrictions, but his reasons for doing so lack substantial support in the record. The ALJ found that plaintiff's hand injections have "been effective," but the only evidence he cited for this is Dr. Hall's statement on March 7, 2016, that "[s]he reports her right hand is much improved after the Celestone injection" (Tr. 428). That injection was administered on February 15, 2016 (Tr. 404). The ALJ made no findings as to the extent or duration of this relief. The mere fact that the injection provided relief after three weeks is not evidence a reasonable mind would accept as adequate to warrant the dismissal of plaintiff's subjective complaints of pain and numbness in her hands, fingers, and wrists.

The ALJ also pointed to two entries in plaintiff's medical records stating that "pain is controlled with current medication regimen" and "[p]atient is well controlled on medications" (Tr. 28, referring to Tr. 368 and Tr. 417). However, these records do not refer specifically to plaintiff's CTS and they do nothing to contradict plaintiff's claims of numbness and weakness, even assuming her CTS pain is controlled with "five norcos a day 10-325" (Tr. 417).

The ALJ also wrote that, although plaintiff "testified that she drops things due to hand pain[2] and falls due to her back impairment," the medical records "suggest the opposite" because a particular record from January 2016 stated "no falls in the past year" (Tr. 29, citing Tr. 319).

---

[2] Here the ALJ mischaracterized plaintiff's testimony. Plaintiff indicated that she drops things because of numbness, not pain (Tr. 48-49, 170, 173).

6

Obviously, an absence of falling does not show an absence of CTS symptoms.

The ALJ gave Dr. Jurado's opinion "little weight" on the grounds that "he relied on subjective complaints inconsistent with other medical evidence" and that his "report is internally inconsistent" (Tr. 30). Regardless of the reasonableness of this assessment,[3] the ALJ offered no reason for rejecting Dr. Jurado's findings and limitations concerning plaintiff's CTS. Dr. Jurado found plaintiff's sensory perception in both hands to be decreased or absent, and he noted that "Tinel's and Phalen's are positive bilaterally" (Tr. 434-35). He also measured what appears to be severely reduced grip strength in both of plaintiff's hands (5.3 pounds on the right, 6.1 pounds on the left) (Tr. 434, 447). As noted above, Dr. Jurado opined that plaintiff is limited both as to the weight she can lift and carry and as to the percentage of time she can use her hands for reaching, handling, fingering, feeling, and pushing/pulling, to an extent that is incompatible with the ALJ's RFC assessment. The ALJ has not adequately explained why he declined to abide by these restrictions.

---

[3] It is unclear why the ALJ thought Dr. Jurado's opinion deserved "little weight" on the grounds that "he relied on subjective complaints inconsistent with other medical evidence." The ALJ's explanation is that "the claimant reported problems with balancing, falling, and dizziness to Dr. Jurado. As detailed above, this is inconsistent with her medical records" (Tr. 30). The ALJ did not explain the inconsistency. Nor is it apparent that Dr. Jurado "relied" on plaintiff's subjective complaints regarding balance, falling, and dizziness, as he simply recorded that plaintiff made these complaints (Tr. 433).

The ALJ also discounted Dr. Jurado's opinion on the grounds of internal inconsistency. The ALJ's explanation is that Dr. Jurado found plaintiff's "limitations [to be] mild to moderate" regarding her functional ability to work, while finding greater limitations on two pages of the check-box section attached to the narrative report (Tr. 30, comparing Tr. 435 with Tr. 439-40). This alleged inconsistency is imaginary. The statement regarding "mild to moderate" limitations related to plaintiff's ability to walk, as the context for this sentence concerned plaintiff's "ambulation without a cane" and her antalgic gait, while the two allegedly inconsistent check-box pages related to plaintiff's ability to use her hands, her feet for operation of foot controls, her postural activities (e.g., climbing and crawling), and her hearing and vision.

7

On remand, the ALJ must reevaluate all of the evidence concerning plaintiff's CTS and, as appropriate, revise his RFC assessment and his hypothetical question(s) to the VE. If the ALJ again finds that plaintiff, despite her bilateral CTS, needs no further restrictions than light work, "no vibratory tools," and "only frequent handling, fingering, and grasping on the right," he must clearly articulate his reasons and support these restrictions with record citations.

Third, and for similar reasons, the RFC assessment in this matter is flawed because substantial evidence does not support the ALJ's finding that plaintiff can perform light-level work on a full-time basis despite her back impairment. As the ALJ found, plaintiff has degenerative disc disease (Tr. 25). An MRI in June 2015 showed

> [m]ost significant changes . . . at L5-S1. There is degenerative disc disease with loss of disc height present. Posteriorily there is a disc osteophyte complex that causes moderate to severe foraminal narrowing bilaterally. The disc does extrude into the right subarticular region with subarticular canal stenosis and compression upon the right S1 nerve root.

(Tr. 425). Plaintiff has been prescribed a TENS unit and a back brace (Tr. 358), and she has had physical therapy and epidural injections (Tr. 320, 326, 332, 339). Plaintiff testified that her back pain is constant, and that to relieve the pain she must lie down "at least three times a day" for 20-30 minutes each time (Tr. 47-48). Dr. Jurado noted decreased sensory perception in plaintiff's right foot, absent sensory perception in plaintiff's left foot, and limited range of motion in her lumbar spine (with straight leg raising of 45 degrees on the right and 20 degrees on the right) (Tr. 435). He opined that plaintiff could sit for four hours and stand for three hours during an eight-hour work day (Tr. 438), a restriction that presumably would preclude full-time work.

The ALJ's reasons for rejecting plaintiff's subjective complaints and Dr. Jurado's restrictions do not withstand scrutiny. He first stated that epidural injections in plaintiff's back have

8

been "effective" (Tr. 28). Yet the only medical records cited by the ALJ in support of this statement are notes showing that plaintiff received caudal epidural steroid injections on three occasions in December 2015 and January 2016 and that "[t]here was some relief of the presenting pain symptoms" (Tr. 321, 326, 332). That "some relief" was provided by three injections over a four-week period is not evidence a reasonable mind would accept as adequate to support the conclusion that plaintiff does not, as she claims, need to lie down periodically throughout the day to relieve her back pain.

Next, as with plaintiff's CTS, the ALJ minimized plaintiff's back pain by pointing to two entries in the medical records stating that "pain is controlled with current medication regimen" and "[p]atient is well controlled on medications" (Tr. 28, referring to Tr. 368 and Tr. 417). However, these record entries do not refer specifically to plaintiff's back pain and they do nothing to contradict plaintiff's claimed need to lie down periodically throughout the day.

The ALJ also seemed to find plaintiff's back pain complaints contradicted by her daily activities (Tr. 29, first para., citing Tr. 313). Yet no reasonable mind would find any inconsistency between plaintiff's subjective complaints and the minimal activities cited by the ALJ, e.g., attending physical therapy, taking her children to school, and making dinner and doing laundry with her mother's help. Plaintiff does not claim to be completely incapacitated, and the few activities cited by the ALJ are not inconsistent with her claimed need to lie down periodically to relieve her back pain.

The ALJ also believed that while plaintiff testified that her back impairment has caused her to fall, "[t]he medical evidence falls [sic] to substantiate these claims" because a medical record dated January 2016 reported "no falls in the past year" (Tr. 29, citing Tr. 319). Again,

9

however, the perceived inconsistency is nonexistent. At her hearing in April 2016, plaintiff testified that she had fallen the previous Sunday (Tr. 47), not that she had fallen at any time in the year preceding January 2016.

In short, the ALJ has offered no convincing reason for rejecting plaintiff's hearing testimony about the severity of her back pain or her need to lie down three or more times per day to relieve it. Nor, as explained above, has the ALJ offered any convincing reason for rejecting Dr. Jurado's restrictions, which are supported by his own findings (restricted range of motion, straight leg raising, reduced/absent perception in plaintiff's feet) and the MRI showing "moderate to severe foraminal narrowing and disc compression to the right S1 nerve root" (Tr. 435).

On remand, the ALJ must reevaluate all of the evidence concerning plaintiff's back impairment and, as appropriate, revise his RFC assessment and his hypothetical question(s) to the VE. If the ALJ again finds that plaintiff, despite her back impairment, needs no further restrictions than light work, "occasional postural activities, but no ladders, ropes, or scaffolds," and a sit/stand option, and that she does not need to lie down periodically throughout the day, he must clearly articulate his reasons and provide supporting record citations.

For these reasons, the Court concludes that the decision in this matter is not supported by substantial evidence. Remanding the matter for an award of benefits would not be appropriate at this time because the record, in its current state, is not such that "proof of disability is overwhelming or . . . proof of disability is strong and evidence to the contrary is lacking." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). Rather, the matter must be remanded so that defendant may address the deficiencies noted above. Accordingly,

IT IS ORDERED that defendant's motion for summary judgment is denied.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment is granted and this matter is remanded for further proceedings to address the issues outlined in this opinion. This is a sentence four remand under § 405(g).

Dated: April 4, 2018  
Detroit, Michigan

s/Bernard A. Friedman  
BERNARD A. FRIEDMAN  
SENIOR UNITED STATES DISTRICT JUDGE

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 4, 2018.

s/Johnetta M. Curry-Williams  
Case Manager